UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SONNY PERDUE, et al.,<br><br>Defendants. | No. 1:20-cv-01452-DAD-JLT<br><br>ORDER DENYING DEFENDANTS' MOTION TO MODIFY AND DISSOLVE THE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>(Doc. No. 36) |

This matter is before the court on defendants Sonny Perdue, the Secretary of Agriculture; William Northey, the United States Department of Agriculture's ("USDA") Under Secretary for Farm Production and Conservation; and USDA's (collectively, "defendants") motion to modify and dissolve the court's October 28, 2020 temporary restraining order and preliminary injunction. (Doc. Nos. 33, 36.) Pursuant to General Order No. 617 addressing the public health emergency posed by the coronavirus pandemic, on November 20, 2020, the court took this matter under submission to be decided on the papers, without holding a hearing. The court has considered the parties' briefs and, for the reasons set forth below, will deny defendants' motion to modify and dissolve the temporary restraining order and preliminary injunction issued in this case.

/////

/////

**BACKGROUND**

The factual background of this case has been addressed in the court's prior order and will be discussed here only as relevant to resolution of the pending motion. On October 28, 2020, the undersigned issued an order granting plaintiffs' motion for a temporary restraining order and a preliminary injunction. (Doc. No. 33.) Specifically, the court's order prevented defendants from giving effect to defendant USDA's September 30, 2020 decision to suspend the October 2020 Farm Labor Survey ("FLS") and to cease publication of the November 2020 Farm Labor Report ("FLR"). (*Id.* at 28); *see also Notice of Revision to the Agricultural Labor Survey and Farm Labor Reports by Suspending Data Collection for October 2020*, 85 Fed. Reg. 61719 (Sept. 30, 2020) ("the Suspension Notice").

Thereafter, on November 5, 2020, the United States Department of Labor ("DOL") published a final rule amending its regulations and revising the methodology by which it determines the hourly Adverse Effect Wage Rates ("AEWRs"). *Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 85 Fed. Reg. 70445. The DOL's newly issued rule states that

> the Department [of Labor] has determined it is appropriate to use the 2020 AEWRs, which were based on the results of the FLS published in November 2019, as the starting point to establish AEWRs for most H-2A job opportunities during calendar years 2021 and 2022 and, subject to annual adjustments, in subsequent years. Accordingly, the Department will use this FLS data as baseline wage rates for field and livestock worker occupations and adjust the wages annually beginning in 2023 based on the change in the Employment Cost Index (ECI) for wages and salaries computed by the BLS. This two-year transition period during which the current wage rates will remain in effect provides employers with greater certainty and a reasonable amount of time to plan their labor needs and agricultural operations under the new wage baseline before new adjustments to the existing wage rates take effect. For all other occupations, the Department, as explained in Section II.B.5.b., will annually adjust and set the hourly AEWRs based on the statewide annual average hourly wage for the occupational classification, as reported by the OES survey. If the OES survey does not report a statewide annual average hourly wage for the occupation, the AEWR shall be the national annual average hourly wage reported by the OES survey.

*Id.* Notably, the DOL's newly issued rule is not to go into effect until December 21, 2020. *Id.*

/////

Nonetheless, defendants now argue in the pending motion that the DOL's newly issued rule negates the premise underlying plaintiffs' claim of irreparable harm, as well as the basis for the court's October 28, 2020 order. (Doc. No. 36 at 7.) Specifically, defendants contend that defendant USDA's decision to suspend data collection cannot be the cause of any harm alleged by plaintiffs because whether defendant USDA collects and publishes FLS data before the end of this year will ultimately have no effect on the setting of the 2021 AEWRs and therefore will have no effect on wage rates of farm workers. (*Id.*) (citing 85 Fed. Reg. at 70453). To that end, on November 5, 2020, defendants filed the instant motion to modify and dissolve the temporary restraining order and preliminary injunction pursuant to Local Rule 231(e). (Doc. No. 36.) On November 11, 2020, plaintiffs filed their opposition brief. (Doc. No. 39.) Defendants filed a notice on November 16, 2020, to which plaintiffs responded on November 17, 2020. (Doc. Nos. 40, 41.)[1]

---

[1] In their notice, defendants responded to plaintiffs' representation in their opposition to the pending motion. (Doc. No. 40.) Attached to defendants' notice is the declaration of Hubert Hamer, the Administrator of the U.S. National Agricultural Statistics Service ("NASS") at USDA. (Doc. No. 40-1 at ¶ 1.) Therein, Administrator Hamer details the standard timeline associated with the FLS and FLR's data collection and report publication process and states that completing the FLS off-cycle from its originally scheduled collection period has lengthened the process by one week. (*Id.* at ¶¶ 3, 10–12.) Defendants therefore emphasize, contrary to plaintiffs' assertion that "2020 FLS data will be available to calculate 2021 AEWRs" (Doc. No. 39 at 1), that "NASS does not expect publication of the Farm Labor report before the end of the calendar year." (Doc. No. 40-1 at ¶ 18; *see also* Doc. No. 40 at 1.) In response, plaintiffs contend that "[d]efendants' conduct, as described in the Notice, reflects a resistance to the orderly administration of a critical labor market program affecting hundreds of thousands of U.S. farmworkers and agricultural guestworkers." (*Id.* at 1.) Plaintiffs assert that the delays that Administrator Hamer attests to "were avoidable and inappropriate." (*Id.* at 2.) Plaintiffs also remain unconvinced by defendants' explanation as to "why completing the October FLS will take substantially longer than normal." (*Id.*) Plaintiffs cite to the decision in *United States v. Robinson*, 449 F.2d 925 (9th Cir. 1971) and note that there it was concluded "that the district court was entirely justified in concluding that appellants intentionally, and without adequate [excuse], defied the court by waiting five days (including a weekend) to comply with the court's order." (*Id.* at 2 n.1.) In any event, defendants' clarification does not impact the court's resolution of the pending motion. Additionally, to the extent plaintiffs suggest that defendants are in violation of the court issued temporary restraining order and preliminary injunction, plaintiffs have neither brought that matter before the court nor presented supporting evidence that would allow the court to make such a determination. *See Robinson*, 449 F.2d at 927–29 (noting that the government moved for orders requiring appellants to show cause why they should not be held in contempt, and that those motions were accompanied by affidavits).

**LEGAL STANDARD**

"A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) (citing *System Federation No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961)); *see also Lapin v. Shulton, Inc.*, 333 F.2d 169, 170 (9th Cir. 1964) (An "issuing court has continuing jurisdiction to modify or revoke an injunction as changed circumstances may dictate."). "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 793 F. App'x 482, 484 (9th Cir. 2019)[2] (internal citation and quotation marks omitted).

If the moving party demonstrates a significant change, the court must determine whether dissolution of the injunction is warranted following the guidance of "the same criteria that govern the issuance of a preliminary injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (establishing the criteria used to determine whether a preliminary injunction should be granted); *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (explaining that the Ninth Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor") (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (*en banc*)).[3] The moving party bears the burden with respect to establishing that consideration of those criteria results in the conclusion that dissolution of the injunction is appropriate. *Id.*

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[3] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

# ANALYSIS

**A.   Whether Plaintiffs Can No Longer Identify Any Injury Redressable by the Preliminary Injunction**

The court will begin by addressing defendants' argument regarding mootness, "because mootness is a jurisdictional issue." *California v. Azar*, 911 F.3d 558, 568 (9th Cir. 2018), *cert. denied sub nom. Little Sisters of the Poor Jeanne Jugan Residence v. California*, __ U.S. __, 139 S. Ct. 2716 (2019). The court must "determine questions of mootness in light of the present circumstances where injunctions are involved," and more specifically must determine, "whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Id.* at 69.

Here, defendants argue that dissolution of the October 28, 2020 preliminary injunction is appropriate because plaintiffs neither have an Article III injury nor face any imminent, irreparable harm supporting the continued preservation of that injunction. (Doc. No. 36 at 12.) According to defendants, maintaining the injunction would require defendant USDA to conduct a survey that is not required by either statute or regulation, and, under the DOL's newly issued rule, the injunction will have no bearing on whether the DOL releases the 2021 AEWRs that plaintiffs speculated would go unpublished absent the court granting preliminary relief. (*Id.* at 13.) In sum, defendants contend that this new legal regime has rendered plaintiffs' claim for injunctive relief moot. (*Id.*) The court is not persuaded by this argument.

Although the publication date of DOL's new rule was November 5, 2020, that rule does not become effective until December 21, 2020. *See* 5 U.S.C. § 553(d). "[T]he purpose of the time lag required by § 553(d) after publication of the regulation as finally issued is to 'afford persons affected a reasonable time to prepare for the effective date of a rule or rules *or to take any other action which the issuance of the rules may prompt*.'"[4] *Rowell v. Andrus*, 631 F.2d 699, 703 (10th

---

[4] Plaintiffs argue that the DOL's recently published new rule will be challenged, and serious questions exist as to its validity. (Doc. No. 39 at 13–15.) While the court will not address the merits of these arguments, and the parties acknowledge that potential litigation is immaterial to the resolution of the pending motion (*id.* at 14; Doc. No. 36 at 12), the court does note that the potential for the newly announced rule being challenged does underscore the purpose of the time lag required under § 553(d).

Cir. 1980) (emphasis added) (citing United States Senate Committee on the Judiciary, Administrative Procedure Act: Legislative History 201, 259 (1946)). As noted, the DOL's new rule will not be effective until December 21, 2020. (Doc. No. 39 at 13); *see also* 85 Fed. Reg. 70445. Moreover, the Ninth Circuit has held in similar contexts that "mootness is not an issue until the final rules supersede the" prior rule. *Azar*, 911 F.3d at 569 (finding that a prior rule's validity was a live controversy because it had not yet been superseded, and thus the court could "still grant the parties effective relief"). As plaintiffs put it here,

> [i]f the October 2020 FLS data that USDA is supposed to be collecting under this Court's Order were to become irrelevant to DOL's administration of the H-2A program, it would happen only after DOL's new rule becomes effective. Until then, this Court can grant Plaintiffs effective relief by preventing USDA from arbitrarily canceling the FLS and leaving hundreds of thousands of farmworkers exposed to the risk of losing the AEWRs' protections in 2021.

(Doc. No. 39 at 13.)

Because the DOL's newly announced rule does not become effective until December 21, 2020, the court concludes that the circumstances have not changed; plaintiffs' Article III injury and claims of imminent, irreparable harm remain the same as they were when this court issued its October 28, 2020 order. (*See* Doc. No. 33 at 23–24.)

**B.  Whether the DOL's New Rule Negates the Legal Premise of the Court's October 28, 2020 Order**

Defendants also argue that dissolution of the injunction is warranted because the DOL's newly announced rule demonstrates that the Suspension Notice is not a reviewable "final agency action." (Doc. No. 36 at 10.) The Administrative Procedure Act "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, __U.S.__, 140 S. Ct. 1891, 1905 (2020) (internal citation and quotation marks omitted). Only "final agency actions" are reviewable under the APA. 5 U.S.C. § 704; *see also id.* § 701 (for purposes of the APA's judicial review provisions, "agency action" has "the meaning[] given" by § 551). An "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).

1    Here, defendants argue that the DOL's newly published rule demonstrates that defendant
2    USDA's Suspension Notice is not a reviewable "final agency action." (Doc. No. 36 at 10) (citing
3    5 U.S.C. § 704). As explained in this court's prior order, the Suspension Notice constituted a
4    final agency action because it is part of another final agency action: the DOL's creation of a
5    methodology for calculating the AEWRs. (Doc. No. 33 at 11–15.) Defendants now argue that
6    "[t]he 'old set of rules' governing the AEWR methodology 'cannot be evaluated as if nothing has
7    changed.'" (Doc. No. 36 at 11) (citing *Nat'l Min. Ass'n v. Dep't of Interior*, 251 F.3d 1007, 1011
8    (D.C. Cir. 2001)). Defendants contend that a new system now exists in which the DOL will no
9    longer utilize new FLS data to calculate the 2021 AEWRs, and thus "USDA's collection and
10   publication (or not) of new FLS data will not affect those rates." (*Id.*) In support of this
11   argument, defendants rely on the recent decision in *California v. EPA*, 978 F.3d 708 (9th Cir.
12   2020), a case in which the Ninth Circuit reversed a district court's denial of a motion to dissolve
13   an injunction issued against the United States Environmental Protection Agency ("EPA") in light
14   of new rulemaking amending a prior rule.

15   The court is not, however, persuaded that *California v. EPA* applies. As plaintiffs note,
16   and as this court has explained above, no significant change in the law has yet occurred in this
17   case because the DOL's recently published new rule is not yet effective. (Doc. No. 39 at 17.)
18   Moreover, the deadline extension at issue in *California v. EPA* became effective *before* the
19   district court denied EPA's motion to dissolve the injunction.[5]  *See* 978 F.3d at 712, n.2 ("[N]o
20   party has moved to stay the new regulations pending the D.C. Circuit's review, so they are

---

22   [5] As plaintiffs have summarized, the Ninth Circuit in *California v. EPA* was confronted with the following situation:

> The district court denied EPA's Rule 60(b) motion on November 5, 2019. *See California v. EPA*, No. 18-cv-3237, 2019 WL 5722571 (N.D. Cal. Nov. 5, 2019). EPA promulgated the final rule extending its compliance deadline on July 8, 2019, and that regulation became effective September 6, 2019. *See Repeal of the Clean Power Plan; Emission Guidelines for Greenhouse Gas Emissions From Existing Electric Utility Generating Units; Revisions to Emission Guidelines Implementing Regulations*, 84 Fed. Reg. 32,520 (July 8, 2019).

28   (Doc. No. 39 at 13 n.6.)

7

undisputedly in effect.")  To prematurely evaluate the pending motion to modify and dissolve the October 28, 2020 injunction as though the law had already changed would risk plaintiffs suffering irreparable harm, as discussed in the court's prior order.  (*See* Doc. No. 33 at 25) ("But as plaintiffs correctly noted at the hearing on the pending motion, if the DOL's new methodology is challenged and ultimately set aside, and the 2021 AEWRs ultimately require the FLS data to be calculated, they will suffer irreparable harm if the court does not preserve the status quo now because the October 2020 FLS data will not have been gathered and will not be available when it is needed."); (Doc. No. 39 at 17) (The DOL's new rule "may *never* become effective if it is stayed or vacated during litigation, as this Court recognized.").  Contrary to defendants' assertions, the "old set of rules" governing the AEWR methodology *must* be evaluated as if nothing has changed because, in fact, nothing has yet changed.

In sum, defendants have not demonstrated that a significant change in the law or facts has occurred.  Thus, the court need not re-evaluate whether the Suspension Notice constitutes a final agency action in light of the newly published, but not yet effective, rule.  Nor will the court determine whether dissolution of the injunction is warranted by re-examining the *Winter* factors. *See Karnoski*, 926 F.3d at 1198.

## CONCLUSION

For the reasons set forth above, defendants' motion to modify and dissolve the temporary restraining order and preliminary injunction (Doc. No. 36) is denied.

IT IS SO ORDERED.

Dated:  **November 25, 2020**  

_____
UNITED STATES DISTRICT JUDGE